(124 So. 912)

### HAVARD v. STATE.  (1 Div. 849.)

Court of Appeals of Alabama.   May 21, 1929.

Rehearing Denied June 18, 1929.

Outlaw, Kilborn & Smith, of Mobile, for appellant.

Charlie C. McCall, Atty. Gen., for the State.

SAMFORD, J. One Martin Burns claimed to be in possession of a landing on Gates Bayou known as Gates Landing and the oyster grounds beginning at the mouth of Gates' Bayou and extending some 1½ miles in Heron Bay to the end of Cedar Point. Gates Landing is on Gates Bayou about 1,000 feet from Heron Bay. Both Gates Bayou and Heron Bay are a part of the navigable waters of the state of Alabama. Burns warned defendant to stay off of the water over the oyster beds and off of the landing. This warning defendant ignored and continued to go on the landing and on the water in Heron Bay over the oyster beds and to take oysters therefrom. The possession of Burns, the prosecutor, was a claim under a lease from R. V. Taylor, wherein the premises leased were described as follows: "That certain property, including the oyster grounds therein situated, all the oyster rights thereon, the oyster landing known as Gates Landing and the approaches thereto, at Heron Bay and on Man Louis Island, in Mobile County, Alabama, bounded on the North by the Kuppersmith land, on the South by Mississippi

Sound, on East by Cedar point and on West by grounds of W. B. Delchamps." The land occupied by Burns at Gates Landing consists of about one-half acre and fronts on Gates' Bayou, and does not front on Heron Bay, but is about 1,000 feet from the mouth of the bayou. On cross-examination Burns testified that he had only known the premises about three years; that when he went down there under his lease, Gates Landing was just a small landing on Gates Bayou for boats coming in from Heron Bay and out; that there was no county road that leads down to the landing; that the road was just a path through the marsh that the county commissioners had constructed: "The public uses this road when they want to go down there—when they want to go down to this landing. The oystermen use it in going to their work. The oystermen and fishermen that fish out in that Bayou and Bay use that landing and use that road to get to it all the time and in November when I claim to have warned these people, that was true—they were going in and out—the public—and people would come out from Mobile in automobiles in fishing parties, and drive up there and leave out there to go to the 'Cut off'—anybody that wanted to go out to that landing." The testimony of the witness Burns relating to a time prior to his claim of possession under the Taylor lease was hearsay and of no probative force. The whole of the legal testimony tended to prove that this landing had been used by the public as a landing place for many years, some say as long as seventy years, and while there is some slight testimony to the effect that this was a permissive use for the last few years, the use had ripened into a prescriptive right long before these witnesses testifying to a permissive use knew anything about it. There was also some testimony of a negative character to the effect that the oysters on the flats had been originally planted by some one, but the overwhelming weight of the evidence is to the effect that the oyster reefs in Heron Bay were natural and extended from the mouth of Gates' Bayou to Cedar Point a distance of about 1½ to 2 miles, and that oystermen had been tonging and catching oysters from that reef for more than 50 years and had never been interfered with until Burns moved in and claimed possession.

■ All the beds and bottoms of the rivers, bayous, lagoons, lakes, bays, sounds, and inlets within the jurisdiction of this state are the property of the state of Alabama, to be held in trust for the people thereof, subject to certain rights granted by statute to owners of land fronting on such waters. Code 1923, § 2724; 27 R. C. L. 1071, § 12; Cleveland v. Alba, 155 Ala. 468, 46 So. 757.

■ The only authority for the leasing of oyster lands in this state is found in section 2725 of the Code of 1923. A lease of these lands by a private individual not holding under lease from the state as provided, by statute is void and the claimant has no rights thereunder. 45 Corpus Juris, 466(51); Constitution, § 24; State v. Harrub, 95 Ala. 176, 10 So. 752, 15 L. R. A. 761, 36 Am. St. Rep. 195.

■ Neither the riparian rights of an upland owner adjoining navigable water nor the right given to such owner by statute gives to such upland owner such a possession of the water and the bottoms as will authorize a prosecution for trespass after warning based upon the rights and warning given by such upland owner. Wright v. State, 136 Ala. 139, 34 So. 233; Maddox v. State, 122 Ala. 110, 26 So. 305.

■ Where a public road terminates at high water, the public has a right of passage to navigable water, and the ownership of the shore land and lands under water is subject to the public right of passing thereon to the waters edge. 45 Corpus Juris, 502.

■ Where a road to a navigable water has been used generally by the public for more than 20 years and the shore adjacent thereto has been used generally by the public navigating the water as a landing for boats and their cargoes, such road and landing space has become public by prescription. 8 Mitchie's Digest, 37, par. 2.

■■ The prosecution of this defendant in this case is based upon section 5554 of the Code of 1923, which presupposes a possession of the premises trespassed upon by the prosecutor to the exclusion of this defendant and any others similarly situated. This section is designed for the protection of the possession to real estate against intruders or trespassers, Central Iron & Coal Co. v. Wright, 20 Ala. App. 82, 101 So. 815, and could not extend into navigable waters, 45 Corpus Juris, 448(54).

■ The prosecutor in an indictment charging trespass after warning must be in possession of the entire premises from which the defendant was warned in such sort as that he would be legally authorized to give the warning, and it would be the duty of defendant to obey. A prosecution cannot be based upon a warning not to trespass on a certain 1,000 acres of land, where the prosecutor is only in possession of one acre of the tract and legally authorized to give the warning limited to the one acre of which he is possessed. As in the case at bar, if Gates Landing was a private landing and had not been dedicated to the public, Burns might be legally in the possession, so as to authorize him to give the warning as to the premises at the landing, but Burns was not and could not be in possession of the navigable waters of Heron Bay, and as to that part of the

premises such warning was of no force and effect. As the warning alleged to have been given included premises of which Burns was not in possession, the entire prosecution must fail.

A prosecution for trespass after warning will not lie against one using the landing and the road based upon a warning which included Heron Bay. If the prosecutor has a remedy as against parties taking oysters in the bay and landing them at Gates Landing, it is not by this prosecution.

There are many rulings of the trial court in conflict with the above holdings, for which we are reversing the judgments in this case and Lyons v. State (1 Div. 850. Ala. App.) 124 So. 915.[1] There are other rulings which we do not pass upon for the reason that, under our view of the case, the prosecution cannot further proceed in its present form.

The judgment in this case is reversed, and as the facts cannot be changed on another trial, a judgment is here rendered discharging the defendant.

Reversed and rendered.

